Bissell, P. J.,
delivered the opinion of the court.
The industry of counsel has not unearthed a precedent for an action resembling this in some of its phases. The city council of Aspen passed an ordinance purporting to grant to The Aspen Water and Light Company the exclusive right to furnish water and light to the city, and then attempted, according to the plaintiff’s contention, to modif}' and repeal the franchise. The suit is for the damages resulting from this alleged legislative action. Numerous questions are raised and discussed, but as the claims of the appellants must be adversely adjudged on two grounds, no other proposition will he determined, and only incidental reference if any;will be made to the other contentions.
During the winter of 1884-5, a half dozen gentlemen, who may be left unnamed, devised a plan .to furnish the city of Aspen with water and electric lights. In furtherance of the scheme on the 27th of February, 1885, they prepared articles of incorporation designed to incorporate The Aspen Water and Light Company. It will be assumed that the parties complied with the statute in the execution and record of the certificate, for there is nothing in the proof tending to show otherwise. Concurrently an ordinance was introduced in the common council of the city, which granted to this *14 company the right to maintain and operate the works necessary to distribute water and lights to the citizens. The grant was for a term of twenty years, and the ordinance contained all of the usual provisions supposed to be necessary safeguards to protect the municipality, and to limit and define the rights of the corporation. Nothing further need be stated concerning it. It was alleged and proven that this ordinance was passed with due observance of the conditions and limitations prescribed by the general statutes, and by the vote of a majority of all the persons elected to the council. It will be assumed for the purposes of this decision that the ordinance was valid and became a law. It provided that within ten days from the time it was ratified by a vote of the people, the company should commence active operations for the construction of the works according to the specified plan, and file a bond to protect the city against any breach of the agreement or disregard of the limitations of the act. The vote was an affirmative one, and the promoters at once commenced what, in their proofs and arguments, are called operations. The contracts were limited, and the amount of work done was exceedingly small. The reason of this is very plain. Early in April, a controversy sprung up which extended to the citizens, the members of the council, and the applicants for the right to furnish water and light. What the council did is left in a little obscurity. On April 13th, a resolution was offered to forfeit the franchise. It was ineffectual for legal purposes, for it was not adopted by a majority of all the members elected. Its further consideration may therefore be dismissed. On the 15th of April, a motion was made in the council to adopt another ordinance authorizing a contract with the water and light company. This evidently omitted a part of the provisions of the original act. Just what this latter ordinance was, the scope of the amendment, or how it varied from the original is not apparent from the proof, nor is the claim of counsel concerning it made evident by their arguments. The complaint undoubtedly charges that the city refused to permit the company to construct its works, *15 avers that it notified them it would not carry out its agreement, attempted to repeal the ordinance, and to contract with another corporation. There was no evidence, however, offered to show any rescission by the city, other than the motion of April 15th, which has been stated. Evidence was introduced which tended to prove that after the passage of the resolution in April, one of the principal promoters returned to the city, and started with a force of men to dig on the street. This was stopped by the mayor, but for reasons whicli are not disclosed. Work was never after-wards resumed. In April, 1890, the company brought this action to recover damages. These facts were elicited to support the contention that the plaintiff had acquired certain rights by virtue of the ordinance, which had been infringed by the subsequent proceedings of the council. It was claimed the city authorities repealed the ordinance and rescinded a contract of date March 21st, between the city and the company, to supply water and lights at an agreed price. To further sustain a recovery, and evidently as an essential part of it, a large amount of evidence was offered to the point that all the promoters of the enterprise were men of abundant capital and had ample means to perform the contract. The proof, however, was limited to the financial ability of the promoters, and in no manner tended to show that the company itself was possessed of any means, or had in its treasury any funds which could be used for these purposes. It was shown that the treasury was empty, and that no stock had ever been subscribed for or been issued. Judgment went for the defendants. The record has been thus fully stated that the force and effect of the situation of this company, and the position which the court takes concerning it, may be thoroughly appreciated.
In an action between individuals where the gravamen of the suit is a breach of a contract, to support the recovery of substantial damages, the agreement must appear either presumptively or by proof to have been entered into between persons competent to contract, and performance or its legal *16 equivalent must be established. There was manifest failure in this case, as to the first element of this proposition. A corporation in Colorado is undoubtedly a creature of the statute. To create it, the statutory requirements must be followed, and all the prescribed formalities which relate to the essentials of corporate existence must unquestionably be observed. Thus far, it may- be conceded, the plaintiff has gone with its proof. The certificate of incorporation was offered in evidence and received without objection, and if the execution of that paper ex vigore gave breath and life to the corporate entity, it might be conceded that The Aspen Water and Light Company was competent to contract, and possessed of power to sue and be sued. It is quite possible, that if the corporate character had not been otherwise attacked than by the general denial contained in the answer, the legal presumptions flowing from the production of the certificate would have sufficed to enable it to maintain the suit. It is likewise possible, where a city contracts with a corporation, it may be estopped in a suit upon that contract to deny the corporate character. The application of this principle, however, can only concern the written agreement between the city and the company, by which the city agreed to take a certain number of lights and a certain amount of water, and pay a specified price for the service. It is not plain and may Avell be doubted whether this latter principle can be invoked in a suit brought by a corporation against a city to recover damages sustained, if at all, by the repeal of an ordinance granting certain rights and privileges to the complaining party. Ever since the principle was first enunciated by the supreme court of the United'States, that when a legislative body has granted a charter which confers certain rights and privileges upon a corporation and contains elements of a contract, the sovereignty may not repeal it, and thereby violate the contract which it contains, there has been a reluctance on the part of the courts to extend the principle to cases not strictly within the terms and limits of that adjudication. Some courts have decided that where a corporation is in *17 existence prior to the time of the grant of the privilege, and the right conferred simply relates to the use of the streets of a city, or the construction of bridges, or the establishment of ferries, such grants if not indefinite in their character will be taken to be licenses which are the subjects of rescission, and not to fall within the principle of the Dartmouth College Case. In one sense, of course, ordinances of this description contain certain contractual elements which the courts recognize and enforce; but where the breach alleged is charged to come from the repeal of the act by the legislative body, the doctrine of estoppel cannot be invoked to prevent the city from contesting the corporate existence of the company bringing the suit. Whatever may be the general rule of law, which determines the extent of the issue made by the allegation of corporate character and a general denial of the averment, the plaintiff in the present suit settled the matter by its own proof. Recognizing the necessity to show a readiness and ability to perform, much evidence was put in to show the financial status of the promoters. While giving evidence-on this subject, one of them testified that all the promoters were possessed of ample means ; but there was no money in the treasury of the company, and the corporation had issued no stock at the time of the passage of the alleged ordinance, the taking of the vote of the people, nor up to the time of the trial on the 12th of May, 1892, more than seven years after the doing of the things stated.
. Another witness testified that they had never issued a particle of stock and never intended to. There was no proof | made of any stock subscription, or of the existence of any agreement to take certain stock, or any specified interests in the enterprise; nor evidence given of any contract between the parties which would make them joint holders of the stock of the company when issued. Under these circumstances, the importance of the suggestion that both parties toan agreement must be competent to contract, becomes apparent. In this state, as in most others, corporations are organized under a general statute. We are not concerned with all the limita *18 tions and conditions annexed to the right whether for the benefit of the body or the protection of -the public. The first important step to be taken is the preparation and record of the prescribed certificate. It would be unhesitatingly conceded that such a certificate, containing whatever was directed by the act, must be executed by the persons interested and filed in the offices named. When this certificate is executed and filed, it may be true that for some purposes the corporation has an existence. The extent of the corporate authority, under these circumstances, need not be inquired about, for the case does not disclose the performance of other essential corporate acts. According to the present record, all the promoters ever did was to execute the certificate. It only remains to determine the legal consequences which flow from the failure to complete the organization by the preparation, issue and sale of stock. In some states the general incorporation act provides that, upon the filing of the certificate, the persons who sign it and their successors shall become a body corporate and be invested with certain powers. But even in a case like that, the authorities hold that it only thereby becomes a quasi corporation, invested possibly with certain powers for certain limited purposes. In reality it becomes a corporation only in name. It is universally agreed that a corporation cannot exist without stockholders or member's. As ■said by the learned Commissioner Pattison, in A. R. L., T. & C. Co. v. F. L. & T. Co., 13 Colo. 587: “ Without organization and members, without officers and stockholders, a corporation is but a naked body.” Mora we tz on Corporations, vol. 1, sec. 33.
We are thus confronted with this situation: Conceding ■ex gratia that The Aspen Water and Light Company had an .existence on the 27th of February, 1885, and was possessed .of sufficient corporate capacity to render the grant contained in the ordinance operative to vest in that company the rights ■expressed when the organization should be complete, it remains true that at the time of the alleged breach and the bringing of the suit, the grant had not become operative. *19 Since the grant ran to an entity not then in esse, it may he doubted whether it could be rendered effective by subsequent birth. This, difficult question need not be adjudged. The entity never was born, and hence the grant never took), effect. The agreement of March 21st is subject to the same difficulties. It purports to have been executed by the town of Aspen, through Hooper, its mayor, and by The Aspen Water and Light Company by Wilson, its president, attested by Cleary, its secretary. The company never had any legal president, and never had any legal secretary, and, consequently, the so-called contract was never executed. The statute provides (Gen. Stats, of 1888, secs. 242-4) that the corporate powers shall be exercised by a board of directors or trustees, who must be stockholders of the company, and from which body a president may be elected. This is a statutory limitation upon the corporate power, and the governing body mu'st, according to that statute, be composed of shareholders, and the president can only be rendered competent by possessing the same statutory qualification. Since it is true that' no stock was ever subscribed for or issued by| this company, and no agreement was established which obligated the promoters for the stock of the company so that they might be taken to be joint owners of all of it, it follows that there never was any board of directors competent to make a contract, nor any persons who could execute an agreement for the company. Under these circumstances, one of the first essentials of a valid contract is absolutely wanting. There was not at the date of the alleged breach, and there is not at the present time, any such corporation as The Aspen Water and Light Company. What the rights of the promoters may be, if any, is not before us for consideration. The suit was not brought by them nor in their behalf; but in the name and on behalf of a corporation without a legal existence. Having established this fact by their own proof, its legal results may be invoked by the appellee to maintain the judgment entered in its own favor.
An equally insuperable difficulty springs from the second *20 consideration suggested, to wit: the necessity of proof of performance or its legal equivalent. It would be folly and a waste of time to attempt to state what, under all circumstances, would amount to performance, or what, under others, would be held to be its legal equivalent, where one of the parties showed a willingness and readiness to perform and there was a refusal by the other. The proof in this case demonstrates that The Aspen Water and Light Company, as such, never either performed or tendered performance, or was' ever able to discharge any part or portion of its side of the contract. The record is barren of evidence showing any act by The Aspen Water and Light Company other than what possibly may be called its act in the filing of the certificate of incorporation. Beyond that it did nothing. It never laid pipes, strung wires, dug ditches, brought water, built an electric plant or took any substantial steps in any of these directions. Its work ceased with the filing of the paper. The record contains much testimony which tended to show that after the passage of the ordinance and the execution of the alleged agreement of the 21st of March, the promoters of the enterprise made some contract looking to the purchase of an electrical plant, some provision with reference to the supply of water, and did a very considerable amount of work with reference to the initiation and protection of water rights essential to the complete performance of the contemplated scheme. One of the principal promoters attempted to do a little work on the streets, and continued it until interrupted by the mayor. The importance and significance of this proof is not apprehended. What would have been the rights of The Aspen Water and Light Company had they completed their corporate organization, built the plant and tendered performance, need not be considered, for, as a corporation, it did nothing. What the rights and remedies of the promoters might have been, if the suit had been brought on their behalf, to recover the damages which they sustained by reason of their contracts and expenditures, may likewise be left undetermined. The suit was not brought *21 on their behalf, and the proof with respect to these matters which they offered, and which the court received, was totally inadmissible to support a recovery by The Aspen Water and Light Company. This demonstrates that there was neither performance, tender of performance, nor ability to perform on the part of The Aspen Water and Light Company. If all the proof offered and found in the record had been admissible in the present suit, and was to be considered in the determination of the issues, it would remain true that The Aspen Water and Light Company proved no cause of action accruing to it because of the breach of any contract, or the passage of any ordinance by the city of Aspen.
Many errors are assigned on the instructions which the court gave. Since the plaintiff could not sustain a judgment on the proof which it produced, such errors will not warrant a reversal. Hoagland v. Cole, 18 Colo. 426. The judgment is right. The company was not entitled to recover, and the judgment will be affirmed.

Affirmed.

Thomson, J., did not sit in this case.